### HENRY SCHROEDER

*v.*

### HARRY BOZARTH *et al.*

*Opinion filed December 22, 1906.*

1. MORTGAGES—*by redeeming from foreclosure sale a judgment creditor acquires only the interest of his debtor.* Where a wife joins in a mortgage upon her lands and dies, and the mortgage is subsequently foreclosed against her husband and the minor children, if a judgment debtor of the husband makes redemption he must redeem *en masse;* but he acquires only such title as the judgment debtor had in the lands, and the effect of such redemption is to relieve the interests of other parties from all rights acquired under the foreclosure sale.

2. SAME—*mortgagor does not absolutely lose title by failure to redeem.* A mortgagor, by failing to redeem, does not absolutely lose his title, and if there is no redemption and the certificate of purchase becomes void for any reason, the mortgagor is the absolute owner of the premises by the title which he formerly held.

3. LIMITATIONS—*statute does not run against remainder-men before right of entry accrues.* The Statute of Limitations does not begin to run against remainder-men until the intervening estate is extinguished and a right of entry thereby accrues to them.

4. CONTRIBUTION—*when party is not entitled to contribution.* A judgment creditor of the husband who redeems from the foreclosure of a mortgage upon the wife's lands given to secure the individual debt of the husband is not entitled, as against the heirs of the wife, to have contribution from such lands toward the amount of redemption money advanced by him before he can be deprived of possession.

5. SAME—*right to contribution is barred in five years.* To entitle a party who has redeemed *en masse* from a foreclosure sale to have contribution toward the redemption money from parties whose interest in the lands he has not acquired, the equities of parties must be equal and the right must be enforced within five years.

APPEAL from the Circuit Court of Tazewell county; the Hon. N. E. WORTHINGTON, Judge, presiding.

W. R. CURRAN, (SHOPE, MATHIS, ZANE & WEBER, of counsel,) for appellant:

Minors who are parties to a decree by representation are bound by the decree of the court. *McCampbell* v. *Mason,* 151 Ill. 510; *Hale* v. *Hale,* 146 id. 227.

The statute does not require possession under claim and color of title to be continued in one person for the period of limitation. It is sufficient if the taxes are paid for seven years under the claim and color by those having or succeeding to the possession held and continued under the claim and color. *Peadro* v. *Carriker,* 169 Ill. 584; *Cofield* v. *Furry,* 19 id. 186; *Kruse* v. *Wilson,* 79 id. 241; *Rand* v. *Scofield,* 43 id. 168.

When there is no fraud and no proof showing that the color of title was acquired in bad faith, the court will hold that it was made in good faith. *Chickering* v. *Failes,* 26 Ill. 520; *Mason* v. *Ayers,* 73 id. 124; *Reedy* v. *Camfield,* 159 id. 262.

The grantee of a purchaser at a foreclosure sale acquires color of title under the Limitation act though the judgment of foreclosure may be void. *Hinkley* v. *Greene,* 52 Ill. 223; *Woodward* v. *Blanchard,* 16 id. 425; *Laflin* v. *Herrington,* id. 301.

A foreclosure decree and sale constitute color of title in good faith, although the decree is erroneous, and even void, if unattended with fraud. *Reedy* v. *Camfield,* 159 Ill. 263; *Wright* v. *Stice,* 173 id. 575; *Hassett* v. *Ridgely,* 49 id. 197; *Rawson* v. *Fox,* 65 id. 200.

The good faith required in acquiring color of title is a freedom from a design to defraud the person having the better title. *McCagg* v. *Heacock*, 34 Ill. 476; *Smith* v. *Ferguson,* 91 id. 307; *Burns* v. *Edwards,* 163 id. 494; *Timmons* v. *Kidwell,* 138 id. 13.

Good faith in acquiring color of title does not require ignorance of adverse claims or defects in title. *County of Piatt* v. *Goodell,* 97 Ill. 84; *Brian* v. *Melton,* 125 id. 647; *Coward* v. *Coward,* 148 id. 268.

It is not essential that there should be proof of oral declaration of claim of title. It is sufficient if the person claiming title by limitation acted so as to clearly indicate such claim. *Faloon* v. *Simshauser,* 130 Ill. 649; *James* v. *Railroad Co.* 91 id. 554; *Railroad Co.* v. *Houghton,* 126 id. 233.

A deed is not necessary to transfer the possession of land held adversely to the owner. Where land is held adversely by different occupants and one succeeds to the possession of the other, the identity and continuity of their possession, in order to make the period required to bar the owner, may be shown by parol. *Kepley* v. *Scully,* 185 Ill. 54; *Faloon* v. *Simshauser,* 130 id. 656; *Weber* v. *Anderson,* 73 id. 439.

Where the bar of the Statute of Limitations has become absolute and the party entitled to hold the land is in possession, the title acquired and held under the Statute of Limitations is as available for attack as defense, and it may be asserted against all persons claiming the land. *Keppel* v. *Dreier,* 187 Ill. 303; *Hale* v. *Gladfelter,* 52 id. 91; *Gage* v. *Hampton,* 127 id. 87; *McDuffee* v. *Sinnott,* 119 id. 449.

PRETTYMAN & VELDE, and JOHN T. ELLIFF, for appellees:

A redemption is a statutory proceeding, and a judgment creditor who redeems from a judicial sale acquires only the interest of his debtor in the property redeemed. He does not acquire any rights of the owner of the certificate of purchase, except those of the redemptioner's debtor. *Fischer* v.

*Eslaman,* 68 Ill. 78; *Meyer* v. *Mintonye,* 106 id. 414; *Huber* v. *Hess,* 191 id. 305.

Where a redemption is made by a person not legally authorized to redeem and the redemption money is accepted by the purchaser at the sale redeemed from, the effect of such redemption is to leave the title in the person who owned it at the time of the sale or in his heirs. *Turney* v. *Young,* 22 Ill. 253; *Borders* v. *Murphy,* 78 id. 81; *Clingman* v. *Hopkie,* 78 id. 152; *Littler* v. *People,* 43 id. 188; *Durling* v. *Davis,* 69 id. 133.

A plaintiff cannot recover in ejectment without a present right of possession. A judgment rendered against a plaintiff in an ejectment suit by reason of the pre-maturity of the suit is not a bar to a subsequent suit brought after the right of possession has accrued. *Batterton* v. *Yoakum,* 17 Ill. 288; Hurd's Stat. chap. 45, par. 4; *Mosheimer* v. *Ussleman,* 36 Ill. 232; *Crabtree* v. *Welles,* 19 id. 55.

The complainants are not barred by the judgment in the case of *Bozarth* v. *Largent,* 128 Ill. 95, unless the fee title to the premises in controversy was adjudicated and determined in that case. The burden of proving such adjudication rests upon the appellant. It, however, clearly appears from the opinion of this court in that case that the fee title was not adjudicated or passed on at all. *Sawyer* v. *Nelson,* 160 Ill. 629; *Hoover* v. *King,* 65 L. R. A. 790; *Smith* v. *Rountree,* 185 Ill. 219; *Krause* v. *Nolte,* 217 id. 298; 21 Am. & Eng. Ency. of Law, (1st ed.) 203, 266; *Smalley* v. *Edey,* 19 Ill. 207; *Young* v. *People,* 171 id. 299; *Riverside Co.* v. *Townshend,* 120 id. 9; *Barrows* v. *Kindred,* 4 Wall. 399; *Britton* v. *Thornton,* 112 U. S. 526; *Callaway* v. *Irwin,* 51 S. E. Rep. 477.

Section 6 of our Limitation law, relative to seven years' payment of taxes with color of title and possession, is, in effect, the same as the law of 1839. There are many decisions of this court holding that this section of the Limitation law does not run against a remainder-man until the expira-

tion of the preceding estate. The same is true of a title
claimed by adverse possession for twenty years. *Higgins* v.
*Crosby,* 40 Ill. 260; *Steele* v. *Gellatly,* 41 id. 39; *Rohn* v.
*Harris,* 130 id. 525; *Borders* v. *Hodges,* 154 id. 498; *Blair*
v. *Johnson,* 215 id. 552; *Peterson* v. *Jackson,* 196 id. 40;
*Turner* v. *Hause,* 199 id. 464; *Henderson* v. *Kibbie,* 211 id.
556; *Weigel* v. *Green,* 218 id. 227; *Orthwein* v. *Thomas,*
127 id. 555; *Gindat* v. *Railway Co.* 19 L. R. A. 839; *Jack-
son* v. *Jackson,* 144 id. 274; *Wright* v. *Stice,* 173 id. 575;
*McNeer* v. *McNeer,* 142 id. 388.

Possession consistent with the title of the real owners is
not adverse possession. *Meacham* v. *Bunting,* 156 Ill. 588;
*Mettler* v. *Miller,* 129 id. 630; *Morse* v. *Seibold,* 147 id. 318.

The appellant and his grantors cannot claim or receive
any benefit by reason of their payment of the taxes on the
premises in controversy. They represented the title of a life
tenant, and it is the duty of a life tenant to pay the taxes.
*Prettyman* v. *Walston,* 34 Ill. 175; *Higgins* v. *Crosby,* 40
id. 260; *Blair* v. *Johnson,* 215 id. 552.

The appellant is not entitled to any equitable considera-
tion. He was legally chargeable with notice of all facts per-
taining to the title disclosed by the record. If he actually
bought in good faith, it was due to the fact that he did not
consult competent counsel as to the meaning and effect of
the record. *Buchanan* v. *Bank,* 78 Ill. 500; *Huber* v. *Hess,*
191 id. 305; *Railroad Co.* v. *Swannell,* 54 Ill. App. 260;
*Railroad Co.* v. *Kennedy,* 70 Ill. 350; *Weigel* v. *Green,* 218
id. 227.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by the appellees, who are
the heirs-at-law of Louisa C. Bozarth, deceased, in the cir-
cuit court of Tazewell county, for the partition of the east
half of the south-west quarter of section 17, in township 23
north, range 2, west of the third principal meridian, Taze-
well county, Illinois, and for an accounting, to which bill

appellant was made a party defendant. The appellant answered the bill, setting up title in himself to said premises in fee, and filed a cross-bill to correct the description of the lands described in a deed bearing date September 19, 1889, from William Largent to himself, which deed, it was averred, was intended to convey to the appellant in fee the premises sought to be partitioned, and the issues having been made up the case was referred to the master, who reported that the appellees were the owners of said premises in fee, and were entitled to recover from the appellant rent thereon from October 28, 1901, less the amount paid by him as taxes, and recommended the partition thereof between the appellees in accordance with the prayer of the original bill, and that the deed from Largent to the appellant be so corrected as to cover, by its terms, a description of the premises sought to be partitioned, and objections and exceptions having been overruled to said master's report, the court entered a decree in accordance with the prayer of the cross-bill, correcting the mistake in said deed, and approved the master's report, and found the title to the premises, in accordance with the averments of the original bill, to be in appellees and ordered partition of the premises between the appellees, from which decree, except as to the part which corrected said misdescription in said deed, the appellant has prosecuted an appeal to this court.

In 1849 Louisa C. Allensworth, the grandmother of appellees, became seized in fee, by inheritance from her father, of the premises in controversy. In 1863 she married Asa Bozarth, the grandfather of the appellees. In 1868, while remaining the owner of said premises, Louisa C. Bozarth joined with her husband in the execution of a mortgage upon said premises and other lands owned by her and lands owned by her husband, to secure the payment of a promissory note of Asa Bozarth for the sum of $2500, due March 5, 1870, payable to the order of Anna R. Cohrs. Shortly after the execution of said mortgage the said Louisa C. Bozarth de-

parted this life intestate, leaving her surviving her husband, Asa Bozarth, and James L. Bozarth, born in 1864, Ida B. Bozarth, born in 1866, and Mary L. Bozarth, born in 1867, as her children and sole heirs-at-law. All of her said children have since died intestate, and the appellees are the children of James L. Bozarth and Ida B. Bozarth, said Mary L. Bozarth having died childless and unmarried. In 1873, default having been made in the payment of said $2500 promissory note, Mary C. Maus, the then owner thereof, filed a bill in the circuit court of Tazewell county against Asa Bozarth, James L. Bozarth, Ida B. Bozarth and Mary L. Bozarth to foreclose the mortgage given to secure its payment. The defendants were personally served with process, and a guardian *ad litem* was appointed for the children of Louisa C. Bozarth, who were then all minors. Asa Bozarth was defaulted and the minors answered by their guardian *ad litem.* The court found by its decree that there was due upon the said promissory note the sum of $2973.75, and the same not being paid, the master, to satisfy the said foreclosure decree, sold the premises covered by said mortgage *en masse* to Mary C. Maus on July 12, 1873, for $3048.84, and no redemption having been made within twelve months from the date of sale by the defendants, or either of them, one Albert Welch, who had a judgment for $1223.50 against Asa Bozarth, on the 10th day of October, 1874, redeemed said premises, as such judgment creditor of Asa Bozarth, from said foreclosure sale *en masse,* and no person having bid more than the redemption money at the re-sale of said premises he became the purchaser thereof, and on October 31, 1874, received a sheriff's deed, under said re-sale, for said premises. On December 1, 1875, Welch conveyed said premises by quit-claim deed to John Bozarth. John Bozarth entered into the possession of said lands in 1875 and improved and commenced to cultivate the same, and remained in possession thereof until the spring of 1882. On May 22, 1882, John Bozarth conveyed said premises to William Lar-

gent, who went into possession thereof. In 1887 James L. Bozarth, Ida B. Bozarth and Mary L. Bozarth, the children of Louisa C. Bozarth, commenced an action of ejectment in the circuit court of Tazewell county against William Largent to recover the possession of the premises in controversy, claiming said premises in fee, as heirs-at-law of Louisa C. Bozarth, deceased. A jury was waived and a hearing had before the court, and a judgment was rendered in favor of the defendant, which was affirmed by this court. (*Bozarth* v. *Largent,* 128 Ill. 95.) On March 8, 1889, William Largent contracted to sell the premises in question to the appellant herein. The litigation hereinbefore referred to was then in progress. The appellant waited until he heard the judgment of the trial court in favor of Largent had been affirmed by this court, whereupon he paid Largent $5200, and William Largent executed a deed conveying to him, as they both supposed, said premises. A mistake was made in the deed in the description of the premises, which was corrected by the decree in this case, and no complaint is made in this court as to that portion of the decree. Asa Bozarth died intestate in 1901, and this suit was commenced on August 11, 1904.

The first contention made by appellant is, that Albert Welch, the remote grantor of appellant, by the redemption from the foreclosure sale under the Cohrs mortgage and the re-sale of said premises under his judgment against Asa Bozarth became seized of the fee to said premises against Asa Bozarth, James L. Bozarth, Ida B. Bozarth and Mary L. Bozarth, who were parties to said foreclosure suit, and that his title, deraigned from that source, is absolute as against appellees, who claim title to said premises through Louisa C. Bozarth, deceased, who joined in the execution of the Cohrs mortgage with her husband, Asa Bozarth. The judgment of Albert Welch, under which the redemption from the foreclosure sale was made, and through which Welch, by a re-sale, sought to obtain title to the premises in question, was not against Louisa C. Bozarth, but was

against her husband, Asa Bozarth, and while the redeeming judgment creditor was forced to redeem from the foreclosure sale *en masse,* as the premises were sold under the foreclosure decree in that manner, he only acquired such title by such redemption and re-sale as Asa Bozarth had in and to the lands in controversy, which was a life estate. *Fischer* v. *Eslaman,* 68 Ill. 78; *Huber* v. *Hess,* 191 id. 305; *Bozarth* v. *Largent, supra.*

In the *Fischer case,* Ralls and Pensoneau were the joint owners of a tract of land in the city of Belleville, upon which they gave to their grantor a purchase money mortgage, in the payment of which they made default and the same was foreclosed and the premises sold. After twelve months, in which Ralls and Pensoneau had the right to redeem, had expired, Hardin, Fischer and Hubbell, judgment creditors of Ralls, redeemed from said foreclosure sale, and the premises, at the re-sale, were purchased by Fischer, and the question arose in an ejectment suit whether Fischer acquired the title of Pensoneau in said premises by said redemption and re-sale, and it was held he did not. The court, on page 80, said: "The right to redeem from sheriff's and master's sales after the expiration of twelve months and before the expiration of fifteen months from the day of sale is alone derived from the statute, and it is by it limited to judgment creditors. Inasmuch, therefore, as Hardin, Fischer and Hubbell had no judgment against Pensoneau they were not judgment creditors so far as his interest was concerned, and they could acquire no right to have it sold by the mere act of paying money into the hands of the sheriff to redeem from the master's sale. Having judgments against Ralls gave them no more right to acquire title to Pensoneau's interest than it did to that of anybody else against whom they had no judgment. * * * It surely could not be supposed that because a party had a judgment against a particular individual he thereby became a judgment creditor of any and everybody else whose property had been sold at master's

or sheriff's sale and had not been redeemed within twelve months; and yet this is the only hypothesis upon which these parties can be called redeeming creditors as to Pensoneau's interest."

It is urged, however, that as the *Fischer case* was an ejectment suit a different rule should be applied in this case, which is an equity suit, to Welch, from what was applied in that case to Fischer. The case of *Huber* v. *Hess, supra,* was an equity suit, and the doctrine announced in the *Fischer case* was affirmed and applied in that case. In the *Hess case,* Maria Anna Huber was the owner of two lots, 10 and 11, in the city of Chicago, which were subject to a trust deed for $3500. By her will she gave lot 10 to her daughter, Maria Anna Schumacher, and lot 11 to her son Thomas Huber, the devise of lot 10 to Mrs. Schumacher being subject to the payment of all of said trust deed. The trust deed was foreclosed subsequent to the death of the testatrix, and the premises were sold *en masse* to the holder of the indebtedness secured by the trust deed, for the sum of $4951.87. No redemption took place during the twelve months subsequent to the sale, and appellee Hess, as a judgment creditor of Mrs. Schumacher and her husband, redeemed from such foreclosure sale during the time allowed for redemption by judgment creditors and was the purchaser at the re-sale, and the question arose, upon application of Hess to register his title under the Torrens act, whether by such redemption and re-sale he acquired title, as against Thomas Huber, to said lot 11. It was held he did not, and after commenting on the *Fischer case,* the court, on page 315, said: "Inasmuch * * * as appellee, Hess, had no judgment against Huber, he was not a judgment creditor so far as Huber's interest in lot 11 was concerned, and acquired no right to have it sold by the mere act of paying money into the hands of the sheriff to redeem from the master's sale. The fact that he had a judgment against the Schumachers gave him no more right to acquire title to Huber's interest in lot 11 than it did

to that of anybody else against whom appellee had no judgment. We are therefore of the opinion that the court below decided correctly in decreeing that the title to lot 11 in fee simple was vested in the appellant, Huber, and that the appellee was not entitled to registration of the title to lot 11."

A mortgagor, by failing to redeem, does not absolutely lose his title, and if there is no redemption and the certificate of purchase becomes void, by virtue of the Statute of Limitations or otherwise, the mortgagor is then the absolute owner of the premises, not by any new title, but by the title which he formerly had. (*Lightcap* v. *Bradley,* 186 Ill. 510.) The effect of Welch's redemption was to relieve Louisa C. Bozarth's lands of said encumbrance and to extinguish all rights under the sale as to her, and as Welch had no judgment against her he acquired no rights in her lands by a re-sale. *Fischer* v. *Eslaman, supra; Meyer* v. *Mintonye,* 106 Ill. 414; *Huber* v. *Hess, supra.*

Our conclusion is, that Albert Welch, by the redemption from the master's sale and the re-sale and purchase of said premises, acquired no interest, as against the title of the heirs of Louisa C. Bozarth, in and to the portion of the premises covered by said mortgage which belonged to Louisa C. Bozarth at the time the mortgage was executed.

It is next contended that the judgment in the ejectment suit of *Bozarth* v. *Largent* is a bar to the present suit on the ground that William Largent, the immediate grantor of the appellant, was held in that case to be the owner of the fee to said premises. We do not so understand that case. It appears from the opinion filed by this court in that case that the question of the ownership of the fee in said premises was not adjudicated. On page 110 of the opinion it is said: "The plaintiffs claimed an estate in fee in the land in controversy, with a present right of possession. Their father having a life estate in the property, which has passed, by virtue of the foreclosure sale, the redemption and sale thereunder and the deeds in pursuance thereof, to the defendant,

they are not entitled to recover of the defendant the possession of said lands during the continuance of such estate. Until the termination of that life estate by the death of the life tenant their right to a recovery must be postponed. Some questions are raised as to the effect of the proceedings before mentioned upon the fee to the land, which are not now before us for consideration and no adjudication is made in respect thereof." The holding of the court in the litigation between the Bozarths and Largent was, that Asa Bozarth was entitled to the possession of said premises during his lifetime, and as the plaintiffs in that suit were not entitled to the possession of said premises they could not maintain ejectment therefor, but the question as to whom the fee in the premises belonged was not adjudicated.

It is next contended that the appellees' rights, if any, in said premises, have long since been barred by the Statute of Limitations of this State, and for that reason they cannot maintain this suit. Upon the death of Louisa C. Bozarth her husband became possessed of a life estate in said premises, (*Bozarth* v. *Largent, supra,*) and during his life the heirs of Louisa C. Bozarth were barred of a right of entry, by reason of such life estate, into the possession of said premises, and this court has repeatedly held that a remainder-man or reversioner cannot be barred by the Statute of Limitations until he has the right to enter,—that is, to bring an action to recover the possession of the premises; and this he cannot have during the life of the life tenant. Asa Bozarth died October 28, 1901, and this suit was brought on August 11, 1904, which was in ample time to prevent the running of the Statute of Limitations. (*Mettler* v. *Miller,* 129 Ill. 630; *Turner* v. *Hause,* 199 id. 464; *Henderson* v. *Kibbie,* 211 id. 556; *Weigel* v. *Green,* 218 id. 227.) In the *Mettler case,* on page 642, the court said: "The settled doctrine, both upon authority and upon principle, is, that the possession of land by a tenant for life cannot be adverse to the remainder-man or reversioner; and if he conveys to a

224—21

third person by words purporting to pass the absolute property, the possession of the purchaser is not, and cannot be, during the continuance of the life estate, adverse to the remainder-man or reversioner so as to set the Statute of Limitations running against such remainder-man or reversioner, but after a life estate falls in, the possession will be adverse as to a remainder-man or reversioner. The reason of the rule first stated is, that the possession of the tenant for life, or his vendee, during the continuance of the life tenancy is, in contemplation of law, the possession of the remainder-man or reversioner, and the latter cannot, during the life of the person for whose life the life estate is, bring an action against the person in possession under such life tenant to recover possession of the premises. All statutes of limitation are based on the theory of *laches,* and no *laches* can be imputed to one who has no remedy or right of action, and to hold the bar of the statute could run against the title of a person so circumstanced would be subversive of justice, and would be to deprive such person of his estate without his day in court." And in *Weigel* v. *Green, supra,* on page 236, this court quoted with approval the following paragraph from the case of *Barrett* v. *Stradl,* 73 Wis. 385: "When a person enters under a deed from the person who holds the life estate, which on its face conveys an estate in fee, and when the grantor intends to convey the fee and the grantee supposes he is getting a conveyance of the fee, the person entering under such deed holds, in fact, adversely to all the world; but he cannot avail himself of the rights of an adverse possession under the statute, as against the remainder-man, during the life of the owner of the life estate, but immediately upon the death of the person holding the life estate, such possession, if continued, becomes adverse to the remainder-man." We are of the opinion the Statute of Limitations was not a bar to this suit.

It is finally contended that the appellant cannot rightfully be deprived of the possession and title to said lands

by the appellees without the payment to him of the equitable proportion which the lands of Louisa C. Bozarth should contribute toward the payment of the money paid by Welch to redeem the lands covered by said mortgage from said foreclosure sale. The right of contribution, if it ever obtained in this case, existed as against the lands of Louisa C. Bozarth covered by said mortgage at the time Welch redeemed said lands from the mortgage sale, which was on October 10, 1874, thirty-two years ago. In *Junker* v. *Rush,* 136 Ill. 179, it was held the right to contribution was barred in five years. We think, therefore, that the appellant cannot ask that the lands in question be required to contribute to the payment of said redemption money at this late date. If, however, he yet had time in which to invoke the doctrine of contribution, we think it has no application to a case like the one at bar. To entitle the appellant to have contribution against the lands owned by Louisa C. Bozarth it must appear that the equities of the parties are equal, which is not the case here. Welch, by redeeming as the judgment creditor of Asa Bozarth, placed himself in Bozarth's position with reference to said mortgage indebtedness and the lands sold at the foreclosure sale. Had Asa Bozarth redeemed from said foreclosure sale he could not have called upon Louisa C. Bozarth for contribution, because in redeeming he would simply have been paying his own debt, as the $2500 note secured by the Cohrs mortgage was his debt and not the debt of Louisa C. Bozarth. In the *Hess case, supra,* the doctrine of contribution was invoked. It appeared, however, that Mrs. Huber had provided in her will that Mrs. Schumacher should pay said $3500 trust deed, and it was held for that reason the equities of the owners of said lots 10 and 11 under Mrs. Huber's will were not equal, and that Hess, as the owner of lot 10, was not entitled to contribution toward the redemption money paid to redeem from said foreclosure sale as against the owner of lot 11; that as between Mrs. Schumacher and Thomas Huber, Mrs. Schu-

macher, as the devisee of lot 10, was bound to pay the entire $3500 secured by the trust deed upon the two lots, and that Hess, her judgment creditor, who had redeemed from the foreclosure sale, stood in a no more favorable position towards Thomas Huber than Mrs. Schumacher would had she redeemed from said foreclosure sale, and that Hess could not have contribution towards the payment of said redemption money from Thomas Huber, as the owner of lot 11.

We have examined this record with care, and are of the opinion the decree entered in this case is in accord with well settled legal principles as heretofore announced by this court. It will therefore be affirmed.

*Decree affirmed.*